**FILED - GR**

May 27, 2009 3:30 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __rmw__/_____

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Riza Cater,                                )
                                           )
                    Plaintiff,             )          **1:09-cv-487**
                                           )
                                           )   Hon.  **Janet T. Neff**
         v.                                )         **U.S. District Judge**
                                           )
**GC Services Limited Partnership**,       )
a Delaware limited partnership,            )
                                           )
                    Defendant.             )
                                           )

**Complaint**

**I.     Introduction**

1.      This is an action for damages and declaratory relief, brought against a debt

collector in response to the debt collector's practices which violated the federal Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Collection

Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

**II.    Jurisdiction**

2.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this

judicial district is proper because the pertinent events took place here.

**III.   Parties**

3.      Plaintiff Riza Cater, also known as Riza Summerfield, is a natural person residing

in Kent County, Michigan. Ms. Cater is a "consumer" and "person" as the terms are defined

1

and/or used in the FDCPA. Ms. Cater is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MCPA. Ms. Cater is by a company named Falcon Printing, Inc. in Ada. Michigan.

4.      Defendant GC Services Limited Partnership ("GCS") is a Delaware limited partnership, doing business at 6330 Gulfton, Houston, Texas 77081. The registered agent for GCS in Michigan is The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025. GCS is a "debt collector" as the term is defined and used in the FDCPA. GCS is a "collection agency" and a "licensee" as the terms are defined and used in the MCPA.

**IV.    Facts**

5.      Ms. Cater had a credit account with Chase Bank which she used to purchase goods and/or services for personal, family and/or household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MCPA.

6.      The account allegedly went into default.

7.      Ms. Cater disputes the debt.

8.      Ms. Cater refuses to pay the debt.

9.      Apparently, the allegedly unpaid and delinquent account was turned over to GCS for collection.

10.     Alternatively, GCS purchased the account after the account allegedly was in default.

11.     On or about May 11, 2009, a GCS employee identified as Miss O'Neal telephoned Ms. Cater's sister-in-law, stated that she was trying to contact Ms. Cater regarding an "application," and asked Ms. Cater's sister-in-law to deliver a message to Ms. Cater to telephone

2

Miss O'Neal at GC Services, telephone number 1-866-749-7276, extension 6050, regarding an
application.

12      Ms. Cater's sister-in-law sent in email to Ms. Cater and communicated the
information as requested by the GCS employee, causing Ms. Cater to suffer extreme
embarrassment and emotional distress.

13      A debt collector may not communicate, in connection with the collection of a
debt, with any person other than the consumer, except to acquire "location information" about
the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

14      The FDCPA defines "location information" to mean "a consumer's place of abode
and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

15      When the GCS employee telephoned the Ms. Cater's sister-in-law on or about
May 11, 2009, GCS already knew Ms. Cater's place of abode.

16.     When the GCS employee telephoned the Ms. Cater's sister-in-law on or about
May 11, 2009, GCS already knew Ms. Cater's residential telephone number.

17.     When the GCS employee telephoned the Ms. Cater's sister-in-law on or about
May 11, 2009, GCS already knew Ms. Cater's place of employment.

18.     GCS and its employee wrongfully communicated with Ms. Cater's sister-in-law
for a purpose *other than* to acquire location information. Namely, GCS wrongfully turned Ms.
Cater's sister-in-law into *de facto* debt collector for GCS by persuading Ms. Cater's sister-in-law
to deliver a  message to Ms. Cater in efforts to intimidate, coerce and embarrass Ms. Cater into
paying a debt.

19.     GCS did not obtain the prior consent of Ms. Cater to communicate with her sister-

3

in-law regarding the debt.

20.     GCS and its employees have been sued multiple times in various United States District Courts for unlawfully communicating with the neighbors and relatives of consumers in order to coerce payment of debts.

21.     On or about May 11, 2009, a GCS employee telephoned Ms. Cater at her place of employment and left the following recorded voice message on Ms. Cater's voice mail: "Hi Riza. This is Miss O'Neal. I need a return phone call from you as soon as possible. My number again is 866-749-7276. My direct extension is 6050. I've received some information, I'm not sure if you or Jeff or either of you, if you're aware of it, so, again, give me a call back as soon as possible. Thanks."

22.     GCS and its employee made the May 11, 2009 telephone call to Ms. Cater in an attempt to collect a debt and left a recorded voice message, without stating in the recorded voice message that the communication was from a debt collector.

23.     GCS and its employee made five or more telephone calls to Ms. Cater at her place of employment in attempts to collect a debt and on at least five occasions left a recorded voice message, without stating in the recorded voice message that the communication was from a debt collector and without identifying GCS by name.

24.     Each recorded voice message left by GCS and its employee on Ms. Cater's voice mail was a "communication" as the term is defined and used in the FDCPA. *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F.Supp.2d 1104 (CDCal. 2005).

25.     GCS and its employee failed repeatedly failed to disclose in recorded voice messages left for Ms. Cater that the communication was from a debt collector and repeatedly

4

violated the FDCPA, 15 U.S.C. § 1692e(11). *Foti v. NCO Financial Systems, Inc.,* 424
F.Supp.2d 643 (SDNY 2006); *Leyse v. Corporate Collection Services, Inc.,* 2006 WL 2708451
(SDNY Sept.18, 2006); *Costa v. National Action Financial Services,* 2007 WL 4526510 (EDCal
Dec. 19, 2007).

26.     It was and is the practice of GCS to communicate with a consumer by leaving a
recorded voice message on the consumer's answering machine or voice mail without disclosing
in the message that the communication is from a debt collector.

27.     During the one-year period immediately preceding the filing of plaintiff's
complaint in this lawsuit, GCS telephoned more than one hundred consumers residing within the
State of Michigan and left at least one recorded voice message on each consumer's answering
machine or voice mail without disclosing in the message that the communication was from a debt
collector.

28.     It was and is the practice of GCS to communicate with a consumer by leaving a
recorded voice message on the consumer's answering machine or voice mail without disclosing
in the message that the communication is GC Services Limited Partnership.

29.     In May 2009, Ms. Cater spoke by telephone with a GCS employee identified as
Miss O'Neal. In the ensuing conversation, Miss O'Neal made the following representations:

a)      Chase was looking to file a claim against Ms. Cater to collect a debt in the amount
        of $2,054.39 on Ms. Cater's Chase account ending in 0405.

b)      If Ms. Cater did not make payment arrangements with GCS, then Chase was
        going to proceed with litigation against Ms. Cater.

c)      If Ms. Cater did not pay the debt, then derogatory information regarding the debt

would remain on Ms. Cater's report indefinitely and would prevent Ms. Cater from obtaining credit.

d)  GCS was entitled to communicate with Ms. Cater's sister-in-law because Ms. Cater had not responded to the messages GCS had left for Ms. Cater on Ms. Cater's voice mail at Ms. Cater's place of employment

e)  GCS would contact Ms. Cater's sister-in-law again if Ms. Cater did not continue to communicate with GCS.

f)  Miss O'Neal admitted that she falsely stated to Ms. Cater's sister-in-law that she was calling about an "application" made by Ms. Cater so that Ms. Cater's sister-in-law would give the message to Ms. Cater and cause Ms. Cater to contact GCS.

g)  GCS would continue to telephone Ms. Cater at her place of employment, even though Ms. Cater's employer prohibited its employees from receiving such telephone calls.

h)  Ms. Cater did not have the right to dispute the whole debt.

i)  Ms. Cater was required to contact Chase Bank to dispute the debt.

j)  If Ms. Cater should stop returning Miss O'Neal's telephone calls, then Miss O'Neal could contact Ms. Cater's relatives, employer, and anyone else she wanted in order to get a message delivered to Ms. Cater.

k)  The next time Miss O'Neal called Ms. Cater's place of employment, it would be to verify Ms. Cater's employment so that Miss O'Neal could submit paperwork to Miss Cater's employer so that Chase Bank could then litigate against Ms. Cater.

l)  Miss O'Neal repeatedly demanded that Ms. Cater transfer Miss O"Neal to the

6

Human Resource Department at Ms Cater's place of employment so that Miss
O'Neal could speak to the person in charge of payroll.

m)   Miss O'Neal would be telephoning the Payroll Department at Ms. Cater's place of
employment.

n)   Ms. Cater's dispute of the debt was not valid.

30.   A debt collector may not communicate with a consumer in connection with the
collection of any debt at the consumer's place of employment if the debt collector knows or has
reason to know that the consumer's employer prohibits the consumer from receiving such
communication.  15 U.S.C. § 1692c(a)(3).

31.   Ms. Cater's employer prohibits Ms. Cater from receiving telephone calls at her
place of employment from debt collectors.

32.   A debt collector may not communicate with a consumer in connection with the
collection of any debt at a time or place known or which should be known to the debt collector to
be inconvenient to the consumer.  15 U.S.C. § 1692c(a)(1).

33.   It is inconvenient for Ms. Cater to receive telephone calls from debt collectors
while at her place of employment.

34.   GCS repeatedly telephoned Ms. Cater at her place of employment, causing Ms.
Cater great embarrassment and distress, and threatening her job.

35.   It is a violation of the FDCPA for a debt collector to cause a telephone to ring or
to engage a person in telephone conversation repeatedly or continuously with intent to annoy,
abuse, or harass any person at the called number.  15 U.S.C. § 1692d(5).

36.   GCS telephoned Ms. Cater at her place of employment and attempted to engage

7

her in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Ms. Cater.

37.     The unlawful debt collection methods, acts and practices of GCS and its employees were willful.  The violations of the FDCPA and MCPA by GCS and its employees were willful.

38      As an actual and proximate result of the acts and omissions of GCS and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, embarrassment, stress, mental anguish, emotional stress, and suffering for which she should be compensated in an amount to be established by jury and at trial.

V.      **Claims for Relief**

### Count 1– Fair Debt Collection Practices Act

39.     Plaintiff incorporates the foregoing paragraphs by reference.

40.     Defendant has violated the FDCPA.  Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendant violated 15 U.S.C. § 1692b.

b)      Defendant violated 15 U.S.C. § 1692c(a)(1).

c)      Defendant violated 15 U.S.C. § 1692c(a)(3).

d)      Defendant violated 15 U.S.C. § 1692c(b).

e)      Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

f)      Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading

8

representations and means in connection with the collection or attempted collection of a debt;

g) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

h) Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

d) A declaration that defendant's practices violate the FDCPA; and

e) Such further relief as the court deems just and proper.

## Count 2– Michigan Collection Practices Act

41. Plaintiff incorporates the foregoing paragraphs by reference.

42. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the seizure, garnishment, attachment or sale of the debtor's property;

9

c)  Defendant violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

d)  Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at times or places which are known to be inconvenient to the debtor; and

e)  Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)  Actual damages pursuant to M.C.L. § 339.916(2);

b)  Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)  Statutory damages pursuant to M.C.L. § 339.916(2); and

d)  Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: May 27, 2009

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

10